# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **STACY LEE SINGLETON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 13-4079-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

Plaintiff applied for SSD and SSI, alleging disability beginning November 30, 2008.  (R. 24, 157-66).  In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  He

alleges that the Administrative Law Judge (ALJ) erred in evaluating the medical opinion of his treating rheumatologist, Dr. Mhatre, and in evaluating the credibility of Plaintiff's allegations of disabling symptoms, and that as a consequence of those errors the ALJ's residual functional capacity (RFC) assessment is also erroneous.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers each of Plaintiff's allegations of error.  Because the ALJ assessed weight to the medical opinions before explaining her credibility determination, the court begins, as did Plaintiff, with consideration of the medical opinions.

## II.    Evaluation of the Medical Opinions

Plaintiff claims the ALJ failed to weigh the treating source opinion of Dr. Mahtre properly.  He argues that contrary to the ALJ's rationale, Dr. Welch's findings actually support Dr. Mahtre's opinion, that the ALJ relied upon but a single examination by Dr. Mahtre, that although the ALJ has some familiarity with fibromyalgia, she was negatively biased, and that the ALJ did not acknowledge Dr. Mahtre as a specialist in treating fibromyalgia.  The Commissioner argues that the ALJ reasonably evaluated the medical opinions and provided sufficient reasons, supported by the record evidence to discount Dr. Mahtre's opinion.

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When a treating

4

physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight she assigned that opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Watkins, 350 F.3d at 1300.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion

completely, she must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

The ALJ summarized the medical record evidence of Plaintiff's treatment with Dr. Daughety, Dr. Hu, Dr. Mahtre, nurse-practitioner Brunin, and Dr. Welch.  (R. 30-31).  She summarized the medical opinion of Dr. Mahtre that Plaintiff is able to stand, walk, and sit for less than two hours each in an eight-hour workday, that he must lie down every two hours in a workday, and that he will miss work more than three times in a month.  The ALJ also noted the state agency medical consultants' opinions that Plaintiff is able to perform work at the light exertional level.  (R. 30-31).  She acknowledged that Dr. Mahtre is a treating physician, but declined to give his opinion controlling weight, accorded it "little weight," and gave "significant weight" to the consultants' opinions.  Id.

The ALJ explained that the basis for according "little weight" to Dr. Mahtre's opinion was because it was inconsistent with Dr. Mahtre's "essentially normal" examination, and was inconsistent with Dr. Welch's "essentially normal" examination findings.  (R. 30-31) (citing Ex. 16F, pp.2-4 (R. 500-02), Ex. 9F, pp.1-6 (R. 451-56), Ex. 24F (R. 540-45)).  She accorded "significant weight" to the state agency medical consultants' opinions because they were based on a review of the medical records, because the consultants are familiar with the Social Security standards, because their opinions are consistent with each other, and because they are consistent with the record, including Dr. Mahtre's April, 2011 examination.

Plaintiff argues that the ALJ did not specify what it is about Dr. Welch's examination that is not consistent with Dr. Mahtre's opinion, and that contrary to the ALJ's findings, Dr. Welch's "impression" of "multifocal pain" is consistent with Dr. Mahtre's opinion.  Plaintiff's argument misunderstands the decision.  The ALJ stated that "the severity of Dr. Mahtre's restrictions is not consistent with the essentially normal examination findings of Dr. Welch, who is a neurologist, and found that 'no specific neurological intervention [was] indicated at present.'" (R. 31) (quoting Dr. Welch's examination notes) (emphasis added).  Contrary to Plaintiff's argument, the ALJ specified that Dr. Welch's "essentially normal examination findings" are what is not consistent with the severity of the restrictions opined by Dr. Mahtre.  The essence of the ALJ's finding is that "essentially normal examination findings" are not consistent with an inability to sit, stand, or walk for more than two hours in a workday, and are inconsistent with a need to lie down every two hours in a workday.  Despite Plaintiff's contrary argument, the ALJ was specific in her finding.

While Plaintiff is correct that Dr. Welch's finding of "multifocal pain" is consistent with Dr. Mahtre's diagnosis of fibromyalgia, Plaintiff's argument in that regard is beside the point.  The ALJ specifically found that Plaintiff has severe impairments including fibromyalgia, inflammatory arthritis, degenerative disc disease, and neuropathy, and any one or more of those severe impairments might contribute to "multifocal pain." Moreover, the ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms" (R. 31), including pain.

7

But merely because the doctors agree on the presence of symptoms, or agree on a diagnosis of fibromyalgia, does not mean that Dr. Mahtre's opinion is consistent with Dr. Welch's examination findings, especially where the ALJ specified that the severity of Dr. Mahtre's opinion was inconsistent with Dr. Welch's essentially normal examination findings.  Plaintiff has shown no error in this reason given by the ALJ.

Plaintiff next attempts to find support in the argument that Dr. Mahtre's examination which was relied upon by the ALJ was "abnormal," not "normal," and that the ALJ "attempt[ed] to constrain the record and rely upon a single examination," by Dr. Mahtre.  (Pl. Br. 29).  Again, Plaintiff's characterization misunderstands the ALJ's decision.  The ALJ did not state that Dr. Mahtre's examination was normal, rather she stated that it was "essentially normal."  (R. 31).  The very use of that term acknowledges that the examination was not entirely normal, but it also implies that the abnormalities are not of particular significance.  In particular, in context the ALJ emphasized that the abnormalities reflected in Dr. Mahtre's April 2011 examination are insufficient to justify the limitations reflected in his opinion.  Plaintiff does not attempt to show error in that determination.

Plaintiff's argument that the ALJ relied upon a single examination by Dr. Mahtre, and the implication that she thereby ignored other examinations by Dr. Mahtre provides a better argument in support of Plaintiff's allegations, because as Plaintiff points out the ALJ's decision cited only to Dr. Mahtre's examination from April 7, 2011.  Plaintiff points to examinations performed by Dr. Mahtre on January 7, 2011 and March 20, 2012,

and argues that the results of those examinations support Dr. Mahtre's opinions but not the ALJ's determination.  However, the relatively benign findings cited by Plaintiff are quite similar, and in many cases identical to the findings on the April 7, 2011 examination cited and relied upon by the ALJ.  The findings cited by Plaintiff tend to support Dr. Mahtre's diagnosis of fibromyalgia, but once again there is no argument in this case whether Plaintiff has fibromyalgia, the ALJ agrees with that.

In each examination, the review of systems ("ROS") is "negative" except for fatigue, mild dry mouth and dry eye, paresthesias, and neuropathy symptoms,  and "intermittent fibro fogging."  The portion of each treatment note specifically titled "Examination" reveals essentially negative or normal results in agreement with the ALJ's finding.  Those positive results which are recorded are such things as "1+tenderness," "minimal discomfort," "minimal muscle spasm," "minimal restriction," and "mild muscle spasm."  (R. 501, 505, 592).  While these examinations cannot be (and were not) characterized as "normal" in every respect, they might properly be characterized as "essentially normal," and they do not support the severity of the limitations opined by Dr. Mahtre.  Moreover, although the ALJ only cited one examination by Dr. Mahtre, all of the examinations appealed to by Plaintiff are essentially to the same effect as the examination cited by the ALJ.  An ALJ need not cite to every piece of evidence which supports her decision.  Rather, she must <u>discuss</u> the evidence supporting her decision, the uncontroverted evidence she chooses not to rely upon, and significantly probative evidence she rejects.  <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  She has

done so here, and Plaintiff has shown no error in the ALJ's failure to cite to each examination.

Plaintiff quotes the 1996 opinion of Judge Posner in Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) for the proposition that there is no objective clinical test to identify fibromyalgia, and that the diagnosis of fibromyalgia is based upon identification of 11 of 18 tender spots on a patient's body, and upon subjective reports of symptoms that are easy to fake, and notes that the Sarchet court found that the ALJ's decision in that case demonstrated a "pervasive misunderstanding" of fibromyalgia.  (Pl. Br. 28) (quoting Sarchet).  The court found error in the ALJ's decision in that case because the rationale of the ALJ did "not build an accurate and logical bridge between the evidence and the results."  Sarchet, 78 F.3d at 307.  Plaintiff argues that the "same misunderstanding infiltrates this case" (Pl. Br. 28), and while he admits that the "ALJ [in this case] appears to have some familiarity with fibromyalgia," he argues that the ALJ's familiarity "is tilted on the negative side."  (Pl. Br. 30).

The question here is not whether Plaintiff has fibromyalgia.  Everyone, including the ALJ, agrees that Plaintiff has fibromyalgia and that it is a severe impairment in the circumstances of this case.  Moreover, the issue is not the ALJ's understanding of fibromyalgia.  As Plaintiff admits, in the decision at issue here the ALJ shows familiarity with fibromyalgia.  Plaintiff does not point to any finding of the ALJ which is biased against fibromyalgia, and he does not explain how, specifically, the decision is "tilted on the negative side" against fibromyalgia.  Dr. Mahtre, Plaintiff's treating rheumatologist

diagnosed Plaintiff with fibromyalgia and opined that the limitations resulting from that

diagnosis are such that Plaintiff is disabled from any significant gainful activity.  The ALJ

agreed with Dr. Mahtre's diagnosis, but determined that his opinion is worthy of only

"little weight" because it is inconsistent with his own examinations and is also

inconsistent with the examination findings of Dr. Welch.  The implication of Plaintiff's

argument is that because the ALJ did not accept Dr. Mahtre's opinion, she must not

understand fibromyalgia, and tilted her decision negatively.  But, Plaintiff points to no

"illogical or erroneous statements [in the decision] that bear materially on [the ALJ's]

conclusion that [Plaintiff] is not totally disabled."  Sarchet, 78 F.3d at 307.  He has shown

no error in the ALJ's determination.  In the eighteen years since Sarchet was decided,

ALJ's have developed expertise in dealing with fibromyalgia.  It is the ALJ's

responsibility to evaluate the record and to weigh the medical opinions.  She has not erred

merely because she did not adopt the opinion of Plaintiff's treating physician.

**III.     The Credibility Determination**

Plaintiff claims that "[i]nstead of examining relevant factors [to the credibility

determination in this case], the ALJ focused on other factors," and that "[s]everal of the

ALJ's factors are not ones which have been approved by the Tenth Circuit for

determining the subjective nature of pain."  (Pl. Br. 33).  He argues that the ALJ

improperly relied upon an absence of medical support for Plaintiff's allegations of

symptoms, and thereby adopted "the very position criticized by the Tenth Circuit in Luna

[v. Bowen, 834 F.2d 161 (10th Cir. 1987)]."  (Pl. Br. 33-34).  Plaintiff points to factors

11

which in his view should have been considered in the credibility determination:

persistent attempts to obtain pain relief, use of cane or crutches, psychological disorders

combining with physical problems, activities of daily living, medication use, and

subjective measures of credibility.  (Pl. Br. 34-37).  Plaintiff argues that the ALJ

improperly considered his failure or refusal to follow prescribed treatment, and that the

ALJ substituted her own opinion regarding credibility for that of Plaintiff's treating or

examining physicians.

The Tenth Circuit has explained the analysis for considering subjective testimony

regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)

(dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating credibility, the court has recognized a non-exhaustive list of factors which

should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3) (2001).  These factors include:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

Once it is determined that the ALJ applied the correct legal standard to her credibility determination, the court's review of that determination is deferential. Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

Here, the ALJ explained that once it has been determined that a claimant has impairments which could reasonably be expected to produce the symptoms alleged, she "must make a finding on the credibility of [Plaintiff's allegations] based on a consideration of the entire case record."  (R. 29).  Thereafter, she explained that she had done so.  "After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally not fully credible."  (R. 31).  The court finds that the ALJ in this case properly applied the Luna framework to her credibility determination.  The question remains, giving the ALJ's credibility determination the deference it is due, whether that determination is supported by substantial record evidence.

Plaintiff complains that the ALJ examined irrelevant and unapproved factors in her credibility determination.  Plaintiff suggests that the ALJ focused on irrelevant factors

14

which Plaintiff identified as a lack of alleged support in the medical records, and a

tendency not to be credible (Pl. Br. 33), but he does not explain how or why these factors

are irrelevant to a credibility determination.  If the medical records contain little or no

support for a claimant's allegations of symptoms, that fact seems particularly relevant to

whether the claimant's allegations are credible.  For example, if a claimant alleges he has

particular difficulty hearing, but multiple hearing tests in the medical records reveal no

hearing deficits, that fact is relevant to the credibility of the claimant's allegations.

Perhaps there is an explanation in the record for that claimant's alleged difficulty hearing,

but the hearing tests would certainly be relevant to the inquiry.

　　　　With regard to the factor of a "tendency not to be credible," the court is at a loss to

understand Plaintiff's argument.  The court is unable to identify in the decision where the

ALJ relied upon a "tendency not to be credible" to discount the credibility of Plaintiff's

allegations.  Moreover, if it were possible to identify a "tendency not to be credible," it

would seem to the court that tendency would be particularly relevant to a determination

whether the claimant's allegations are credible in a particular case.  Plaintiff

acknowledges that relevant factors should be considered in a credibility determination,

and he has not shown that the factors he identified are in fact irrelevant to that inquiry.

　　　　It is likewise unclear from Plaintiff's Brief which factors the ALJ relied upon that

"are not ones which have been approved by the Tenth Circuit for determining the

subjective nature of pain."  (Pl. Br. 33).  In any case, Plaintiff does not cite to any

authority for the proposition that before an ALJ may rely upon factors in her credibility

determination those factors must be approved by the Tenth Circuit for that purpose. Moreover, although the court in Luna noted that the Tenth Circuit had previously recognized numerous factors to be considered in a credibility determination, and that the Secretary of Health and Human Services had noted several factors for use in such a determination, it specifically recognized that "no such list can be exhaustive." Luna, 834 F.2d at 165-66. So long as the factors relied upon by the ALJ are relevant to her determination, there is no requirement that they be "approved" by the courts.

Plaintiff argues that "[b]y relying upon the alleged absence of medical support, the ALJ seems to adopt the very position criticized by the Tenth Circuit in Luna." (Pl. Br. 33-34). To be sure, the plaintiffs in Luna claimed that the Social Security Administration had been "systematically denying benefit claims based on disabling pain by improperly requiring objective corroboration of the severity of pain." Luna, 834 F.2d at 161. Although the court in Luna clearly found that it is wrong to require objective corroboration of the severity of pain, it did not find that objective medical data (or the lack thereof) may not be considered in evaluating credibility. Rather, it required "consideration of evidence beyond laboratory and test results whenever a loose nexus is established between the pain-causing impairment and the pain alleged." Id. at 165 (emphasis added). Although an ALJ may not require medical corroboration of the alleged severity of Plaintiff's pain, the medical evidence (or lack thereof) is a factor in step three of the framework of Luna, whereby the decision maker is to consider "all the evidence, both objective and subjective," in making her credibility determination. Thompson, 987

16

F.2d at 1488 (emphasis added).  "[I]nsufficient evidence in the record to support the level of limitations alleged by the claimant" (R. 31), was but one factor among several upon which the ALJ relied in this case.  That is not error.

In pages 34 through 37 of his Brief, Plaintiff points to factors which in his view should have been considered in the credibility determination, and if properly considered would have led to the conclusion that Plaintiff's allegations are credible.  Plaintiff's argument is little more than a suggestion to the court that it should reweigh the evidence regarding credibility and should substitute its judgment in that regard for that of the ALJ. However, the court may not do so.  Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172.  Moreover, Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

For example, Plaintiff points to his alleged persistent attempts to obtain relief from his pain.  However, the court also notes that there is evidence that Plaintiff did not always persist in such attempts.  Plaintiff was seen by Dr. Mahtre on April 7, 2011 (R. 500), but

17

did not show again until March 20, 2012, and Dr. Mahtre characterized the period as Plaintiff "was lost to followup for the last 8-9 months."  (R. 589).  When Plaintiff saw his nurse-practitioner on March 8, 2012, she commented on the delay also.  She noted that Plaintiff complained of uncontrolled joint pain issues, but that "review of his records, reveals he last saw Dr. Mahtre 7 months ago, and has not let him know that he is still in pain."  (R. 602).

Plaintiff also complains that the ALJ found that he "'needs a cane to move about, but a cane is not required for standing at a work station,'" but that the ALJ failed to provide a basis "why a cane is only needed for walking and not standing."  (Pl. Br. 35) (quoting (R. 32)).  Plaintiff states that he testified that he uses a cane, and thereby suggests that his testimony shows the error in the ALJ's finding.  Plaintiff's argument is without merit.  As Plaintiff suggests, he testified at the hearing regarding his use of a cane.  However, that testimony consisted of but a single question and answer.  "Q.  How long have you used a cane?  A.  About six months or so."  (R. 47-48).  But, Plaintiff provided no evidence in the record that a cane is required in order for him to stand at a workstation.  Absent record evidence, the court will not assume such a limitation. Although Plaintiff's counsel thereafter elicited vocational expert testimony that if an individual were required to have a cane in his hand while standing at a work station, he would be unable to perform the representative jobs, he did not cite record evidence that Plaintiff was so limited, and the court finds none.  Statements of counsel are not

evidence--especially such oblique statements as presented here.  It is Plaintiff's burden to establish his limitations, and he has not presented evidence of this implied limitation.

Plaintiff points to the ALJ's findings that Plaintiff did not show for two appointments with Dr. Jones and did not stop smoking, and argues that the ALJ did not demonstrate that attending the appointments or stopping the smoking would have improved Plaintiff's condition.  Thereby, he argues that the ALJ did not apply the <u>Frey</u> test to Plaintiff's alleged failure to pursue treatment, and did not determine whether the treatment would restore Plaintiff's ability to work.  The court recognizes that the ALJ did not apply the <u>Frey</u> test, but it wonders about the applicability of that test in this case.  The ALJ does not contend that if Plaintiff had persisted in his treatment or had stopped smoking he would be restored to the ability to work.  Rather she specifically found that despite a lack of mental health treatment and despite continued smoking, Plaintiff remains able to perform significant gainful activity, and that these facts demonstrate that Plaintiff does not believe he is as limited as he alleges.  (R. 31-32).

In any case, the court need not resolve this issue because like the court in <u>Branum v. Barnhart</u>, 385 F.3d 1268, 1274 (10th Cir. 2004):  "While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record."

Plaintiff also claims the ALJ erred in her credibility determination because "[i]t appears the ALJ's credibility statement is her own opinion and not that of one of

Plaintiff's treating or examining physicians."  (Pl. Br. 39) (citing <u>Miller v. Chater</u>, 99 F.3d 972, 977 (10th Cir. 1996)).  Plaintiff appears to argue that credibility determinations are exclusively within the province of medicine and that it is error for the ALJ to make her own determination in that regard.  The cited case does not support Plaintiff's argument.  The issue in <u>Miller</u> was not credibility.  Rather, in that case the ALJ determined that the plaintiff's medication must have been effective in treating his glaucoma because the physician did not change the medication despite serious side effects.  <u>Miller</u>, 99 F.3d at 977.  However, the court noted that those facts were also consistent with the conclusion that there was no alternative to plaintiff's medication to treat his glaucoma.  <u>Id.</u> Moreover, and perhaps most importantly, the responsibility for determination of credibility is specifically given to the ALJ.  <u>Luna</u> 834 F.2d at 165.  And, she may not rely exclusively on the medical evidence, even on the opinion of a physician with regard to credibility.  <u>Id.</u>

Affording the ALJ's credibility determination the deference it is due, the court finds that Plaintiff has shown no error in that determination.

In her final argument, Plaintiff asserts that "[t]he ALJ's erroneous credibility findings against Plaintiff and rejection of the credible opinions of Dr. Mahtre have caused her to adopt an erroneous RFC."  (R. 40).  Because the court has found no error in the ALJ's evaluation of Dr. Mahtre's opinion or in her credibility determination, it follows that there is no resulting error in the RFC assessment.

20

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 14th  day of October 2014, at Kansas City, Kansas.


s:/ John W. Lungstrum

**John W. Lungstrum**
**United States District Judge**